**Fill in this information to identify your case:**

Debtor 1    Joseph Martin
      First Name      Middle Name      Last Name

Debtor 2
(Spouse, if filing) First Name      Middle Name      Last Name

United States Bankruptcy Court for the: Southern District of Mississippi

Case number   26-51008
(If known)

## Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**

Lendmark Financial Services, LLC
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed $ 14,612.70

To be paid under the reaffirmation agreement $ 14,341.56

$ 271.14 per month for __X__ months (if fixed interest rate)

$271.14 to be paid beginning September 1, 2026 Until paid in full with the full balance including arrears, late fees, and or costs to be paid by the maturity date of the loan.

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed _____ 27.76 %

Under the reaffirmation agreement _____ 15.00 % ☑ Fixed rate
                ☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☑ Yes. Describe the collateral. 2023 HUSQVARNA ZERO TURN

       Current market value   $ 3,500.00

**5. Does the creditor assert that the debt is nondischargeable?**

☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J      Income and expenses stated on the reaffirmation agreement

6a. Combined monthly income from line 12 of Schedule I   $ 3,301.39     6e. Monthly income from all sources after payroll deductions   $ 3,301.39

6b. Monthly expenses from line 22c of Schedule J   – $ 3,301.13     6f. Monthly expenses   – $ 3,301.13

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   – $ 0.00     6g. Monthly payments on all reaffirmed debts not included in monthly expenses   – $ 0.00

6d. **Scheduled net monthly income**   $ 0.26
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

6h. **Present net monthly income**   $ 0.26
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Official Form 427         Cover Sheet for Reaffirmation Agreement         page 1

Debtor 1    **Joseph Martin**
First Name     Middle Name     Last Name

Case number *(if known)* 26-51008

---

**7. Are the income amounts on lines 6a and 6e different?**

☒ No
☐ Yes. Explain why they are different and complete line 10. _____

_____

**8. Are the expense amounts on lines 6b and 6f different?**

☒ No
☐ Yes. Explain why they are different and complete line 10. _____

_____

**9. Is the net monthly income in line 6h less than 0?**

☒ No
☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).
Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

_____

_____

**10. Debtor's certification about lines 7-9**

If any answer on lines 7-9 is *Yes*, the debtor must sign here.

If all the answers on lines 7-9 are *No*, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

✗ _____
Signature of Debtor 1

✗ _____
Signature of Debtor 2 (Spouse Only in a Joint Case)

**11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?**

☐ No
☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
    ☐ No
    ☒ Yes

---

## Part 2:   Sign Here

**Whoever fills out this form must sign here.**

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ _____*Diamond Fuller*_____
Signature

Date 07/24/2026
MM / DD / YYYY

Diamond Fuller
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

---

Official Form 427       **Cover Sheet for Reaffirmation Agreement**       page 2

Form 2400A (12/15)

Check one.
☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

Southern District of Mississippi

In re ___Joseph Martin_____,
  *Debtor*

Case No. 26-51008

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** LENDMARK FINANCIAL SERVICES LLC

☐ Check this box if Creditor is a Credit Union

## PART I.  REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision.  Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A.  Brief description of the original agreement being reaffirmed: Auto Loan

  *For example, auto loan*

B.  *AMOUNT REAFFIRMED*:     $   14,341.56

  The Amount Reaffirmed is the entire amount that you are agreeing to pay.  This may include unpaid principal, interest, and fees and costs (if any) arising on or before ___07/24/2026___, which is the date of the Disclosure Statement portion of this form (Part V).

  *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C.  The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is ___15.0000 %.

  *See definition of "Annual Percentage Rate" in Part V, Section C below.*

  This is a *(check one)* ☑ Fixed rate     ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                          Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐   $_____ per month for _____ months starting on_____.

☑   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$271.14 to be paid on the 1ST of each month beginning September 1st, 2026 until paid in full with the full balance including arrears, late fees and or costs, to be paid by the maturity date of the loan.

E. Describe the collateral, if any, securing the debt:

Description:                2023 HUSQVARNA ZERO TURN
Current Market Value        $                    3,500.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes.  What was the purchase price for the collateral?       $_____

☑ No.   What was the amount of the original loan?             $          16,274.81

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|                                        | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|----------------------------------------|-----------------------------------|---------------------------|
| Balance due *(including fees and costs)* | $          14,612.70            | $          14,341.56      |
| Annual Percentage Rate                 | 27.7600 %                         | 15.0000 %                 |
| Monthly Payment                        | $          271.14                 | $    271.14               |

H. ☐  Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement.  Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.   ☒ Yes      ☐ No

B. Is the creditor a credit union?

Check one.   ☐ Yes      ☒ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1.　Your present monthly income and expenses are:

a. Monthly income from all sources after payroll deductions
(take-home pay plus any other income)　　　　　　　　　$　3,301.39

b. Monthly expenses (including all reaffirmed debts except
this one)　　　　　　　　　　　　　　　　　　　　　$　3,029.99

c. Amount available to pay this reaffirmed debt (subtract b. from a.)　$　271.40

d. Amount of monthly payment required for this reaffirmed debt　$　271.14

*If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2.　You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

Check one of the two statements below, if applicable:

☐　You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

☒　You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

Debtor will pay this using his exempt social security income.

Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

☐　You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                                    Page 4

## PART III.  CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1)     I agree to reaffirm the debt described above.

(2)     Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3)     The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4)     I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5)     I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  _8/12/26_          Signature  _Joseph Martin_
                                              *Debtor*

Date  _____        Signature  _____
                                              *Joint Debtor, if any*


## Reaffirmation Agreement Terms Accepted by Creditor:

Creditor  _Lendmark Financial Services, LLC_        _2118 Usher Street NW Covington, GA 30014_
                    *Print Name*                                      *Address*

_Diamond Fuller_                          _Diamond Fuller_          _07/24/2026_
*Print Name of Representative*                 *Signature*              *Date*


## PART IV.  CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date  _08-12-2026_   Signature of Debtor's Attorney_/s/ Thomas C. Rollins, Jr._

                    Print Name of Debtor's Attorney   _Thomas C. Rollins, Jr._

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay.  Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral.  Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt.  If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.  However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later.  To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled).  Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6.   **When will this Reaffirmation Agreement be effective?**

**a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7.   **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B.   **INSTRUCTIONS**

1.   Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.   Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.   If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.   You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5.   *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

## C.   DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement.  The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above).  Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure.  You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law.  The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges.  You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

## DISCLOSURE STATEMENT, PROMISSORY NOTE AND SECURITY AGREEMENT

DATE: 12/31/2025                    ACCOUNT NUMBER:

| LENDER/SECURED PARTY:<br>(you, your)<br>LENDMARK FINANCIAL SERVICES, LLC<br>15232 CROSSROADS PKWY<br>GULFPORT, MS 39503 | BORROWER(S)/DEBTOR(S):<br>(I, me, my, mine, we, our, and ours)<br>JOSEPH  MARTIN | ADDRESS FOR BORROWER(S):<br>18271 SIMMONS DRIVE  SAUCIER, MS 39574 |

### FEDERAL TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 27.76% | $7526.75 | $8748.06 | $16274.81 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due | Final Payment Date (Maturity Date) |
|---|---|---|---|
| 1 | $277.55 | First Payment Date:     02/01/2026 | 01/01/2031 |
| 59 | $271.14 | Monthly Beginning     03/01/2026 | |

**Security: I am giving a security interest in:**
[X] Consumer goods      [ ] Motor vehicle      [ ] Unsecured      [ ] Other

**Late Charge:** If any installment payment remains delinquent more than 15 days after it is due, I agree to pay a late charge equal to $5.00 or 4% of the unpaid part of the installment payment, whichever is greater, but not to exceed $50.00.

**Prepayment:** If I pay off this note early, I may be entitled to a refund of part of the Finance Charge.

I can see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF THE AMOUNT FINANCED

Amount Given to Me Directly
1. $500.00
2. $0.00

Amount Paid on My Prior Account
3. $8248.06

Amount Paid to Others on My Behalf
4. $0.00     To Allied Solutions/LLC, for GAP Debt cancellation contract*
5. $0.00     To Insurance Company for Life Ins.*
6. $0.00     To Insurance Company for Accident & Health Ins.*
7. $0.00     To Insurance Company for Involuntary Unemployment Ins.*
8. $0.00     To Insurance Company for Vehicle Single Interest Ins.
9. $0.00     To Public Official for Recording Fees
10. $0.00     To Public Official for Lic/Title/Reg Fees
11. $0.00     Sum of Additional Amounts Paid to Others
12. $8748.06     Amount Financed (Sum of 1-11)

$500.00     Prepaid Finance Charge (Closing Fee)

| Additional Amounts Paid To Others | |
|---|---|
| (a) | To |
| (b) | To |
| (c) | To |
| (d) | To |
| (e) | To |
| (f) | To |
| (g) | To |
| (h) | To |
| (i) | To |
| (j) | To |

*Lender may retain a portion of these amounts.

**NOTE:** For value received, I promise to pay to you, or your order, at your address above, the Total of Payments shown above.
**PAYMENT:** I will pay this note in monthly installments as set forth above.
**STATE CONTRACT RATE:** 24.94%
**STATE INTEREST CHARGE:** $7026.75
**POST-MATURITY INTEREST:** Interest will accrue at the rate of 24.94% per year on the balance of this note not paid at maturity, including maturity by acceleration.
**CLOSING FEE:** I agree to pay a Closing Fee in the amount shown above.
[X] **FIRST PAYMENT EXTENSION CHARGE** – If this box is checked, I agree to pay you a charge for extending the first payment in the amount of $6.41 . The first payment extension charge is included in the first payment as shown above in My Payment Schedule.
**SECURITY AGREEMENT:** I grant you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this document secures are defined on page 2.

[ ] (a) Motor Vehicle:

| YEAR | MAKE | MODEL | BODY TYPE | SERIAL NO. / IDENTIFICATION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

[X] (b) Consumer Goods:  See "Personal Property and Other Collateral List" which is incorporated herein by reference thereto.

[ ] (c) Other: See "Personal Property and Other Collateral List" which is incorporated herein by reference thereto

I, the undersigned Borrower, agree to the terms set out on Page 1 and Page 2 and Page 3 of this document. I do hereby acknowledge receipt of a copy of this Disclosure Statement, Promissory Note and Security Agreement, as well as the receipt of the proceeds of the loan as stated above. I further acknowledge that at the time I received a copy of this Disclosure Statement, Promissory Note and Security Agreement, that such forms were complete and filled in and that all blanks in such forms were filled in prior to my executing the same.
THIS DOCUMENT IS EXECUTED UNDER SEAL BY THE BORROWER(S) ON THE DATE ABOVE WRITTEN.

Signed by:
JOSEPH MARTIN
_____ (SEAL)          _____ (SEAL)
Borrower/Debtor                                                                        Borrower/Debtor

_____ (SEAL)
Borrower/Debtor

The undersigned is/are not personally liable for this loan but grant(s) a security interest in the Property described above as security for this loan and agree to be bound by the provisions of this document insofar as they relate to the Property

_____ (SEAL)          _____ (SEAL)

SEE PAGE 2 FOR ADDITIONAL TERMS AND CONDITIONS

MS NOTE & DISC/REV 12/2025          PAGE 1 of 3

## ADDITIONAL TERMS APPLICABLE TO THE NOTE AND SECURITY AGREEMENT

**DEFINITIONS** – "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** – This note and security agreement securing this note will be governed by the laws of the State of Mississippi. The federal Truth-in-Lending disclosures on page 1 are disclosures only and are not intended to be terms of this agreement. The fact that any part of this note and security agreement cannot be enforced will not affect the rest of this note and security agreement. Any change to this note, the security agreement, or any other agreement securing this note must be in writing and signed by you and me.

**ASSUMPTION** – The note and security agreement cannot be assumed by someone buying the Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property, I will be in default under the note and security agreement.

**ELECTRONIC RECORD** - I understand and agree that you may convert this note into an electronic record for document retention and other purposes (the "Electronic Record"). I consent to the conversion of this note into the Electronic Record and agree that the Electronic Record will be the original version of this note and effective, valid and enforceable for all reasons under applicable law. I also agree that sending me a printout of the Electronic Record will satisfy the requirements of applicable law regarding the return of my original note after satisfaction of my obligations under the note.

**CALLS AND MESSAGES:** I understand and agree that you, including your affiliates, assigns, service providers and agents, (collectively, the "Messaging Parties") may use automated telephone dialing, text messaging systems and electronic mail to provide messages to me or contact me about scheduled payments, missed payments and with other important information regarding this agreement or my relationship with the Messaging Parties. Telephone calls may include a pre-recorded message and may be played by a machine automatically when the telephone is answered, whether answered by me, someone else or a voice mail or answering machine. I authorize the Messaging Parties to call or send a text message to any telephone number I have given the Messaging Parties or I give to a Messaging Party in the future, including telephone number(s) set forth in the Application for Credit submitted in connection with this note and security agreement. I also give the Messaging Parties permission to communicate such information to me by e-mail. I understand that, when I receive such calls, texts or e-mails, I may incur a charge from the company that provides me with telecommunications, wireless and/or internet services. I agree that the Messaging Parties will not be liable to me for any fees, inconvenience, annoyance or loss of privacy in connection with such calls or e-mails. I understand that anyone with access to my telephone, answering machine or email account may listen to or read the messages, notwithstanding the Messaging Parties efforts to communicate only with me. **This authorization is part of our bargain concerning this extension of credit and this agreement and understand you do not intend it to be revocable. However, to the extent you are required by applicable law to allow me to revoke my consent to these automatic reminders, I may do so by calling 1-866-413-8340 or submitting a request at www.lendmarkfinancial.com under the Contact Us tab.**

**PAYMENT OPTIONS**- I understand that I can make my loan payments to you by cash, check, money order, ACH, or debit card. I also understand that you contract with a third-party payment processor to process debit card payments and cash payments at select participating retailers. If I choose to make a loan payment using my debit card, I authorize the third-party payment processor to directly charge and collect a fee to process my debit card loan payment. I understand that Lendmark does not and will not receive any portion of this fee. I also understand that you only accept cash payments at select participating retailers and if I choose to make a cash payment at one of those retailers, no fee will be charged to me to process my cash loan payment.

### ADDITIONAL TERMS OF THE NOTE

**PAYMENTS** – Each payment I make on this loan will be applied first to late charges, then to the unpaid balance of the Total of Payments and then to pay other charges due hereunder. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

**PREPAYMENT** – I may prepay this note in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full. If the term of this note is 61 months or less and I prepay this note in full, you will refund the unearned Finance Charge according to the Rule of 78's method. The refund must be based and calculated on the number of days by which the note is paid in advance, less 20 days. If the term of this note is more than 61 months, you will refund the unearned Finance Charge according to the actuarial method. No refunds will be for less than $1.00. The prepaid Finance Charge is fully earned on the Date of the Loan and is not refundable.

**USURY** – The interest rate and other charges on this note will never exceed the highest rate or charge allowed by law for this note.

**LATE CHARGE** - If any installment payment remains delinquent more than 15 days after it is due, I agree to pay a late charge equal to $5.00 or 4% of the unpaid part of the installment payment, whichever is greater, but not to exceed $50.00.

**DEFAULT** – I will be in default on this note and security agreement if any one or more of the following occurs:

(a) I fail to make a payment in full when due;
(b) I cause you to have a reasonable belief that the prospect of payment or performance or realization on collateral is significantly impaired;
(c) I fail to comply with any other promise that I have made in this note or security agreement;
(d) I sell or transfer any security for this note without your prior consent;
(e) I fail to register title to security without your consent;
(f) I make any statement or provide any financial information that is untrue or inaccurate in order to obtain the loan evidenced by this note; or
(g) I fail to maintain any insurance that you may require.

If any of us are in default on this note or security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** – If I am in default on this note or security agreement, you may use any of the remedies listed below:

(a) Make unpaid principal, earned interest and all other agreed charges I owe you under this note immediately due;
(b) Demand more security or new parties obligated to pay this note (or both) in return for not using any other remedy;
(c) Make a claim for any and all insurance benefits or refunds that may be available on my default;
(d) Use any remedy you have under state or federal law; and
(e) Use any remedy given to you in any agreement securing this note.

By choosing any one or more of these remedies you do not give up your right to use another remedy later. By deciding not to use any remedy should I be in default, you do not give up your right to consider the event a default if it happens again.

**ATTORNEYS' FEES AND EXPENSES** -- To the extent permitted by applicable law, I agree to pay the reasonable attorneys' fees that you incur if you retain an attorney who is not your salaried employee to collect this note in the event of my default. To the extent permitted by applicable law, I also agree to pay you for the reasonable expenses incurred by you in realizing on any collateral securing this loan.

**OBLIGATIONS INDEPENDENT** – I understand that my obligation to pay this note is independent of the obligation of any other person who has also agreed to pay it. You may, without notice, release me or any of us, give up any right you may have against any of us, extend new credit to any of us, or renew or change this note one or more times and for any term, and I will still be obligated to pay this note. You may, without notice, fail to perfect your security interest in, impair, or release any security and I will still be obligated to pay this note.

**WAIVER** – I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**MLA SAVINGS CLAUSE** – Nothing contained herein, which constitutes a waiver of a right to legal recourse under any otherwise applicable provision of State or Federal law, shall apply to an individual who is a 'Covered Borrower' as defined by the Department of Defense's Regulation (32 C.F.R. §232) implementing the Military Lending Act (10 U.S.C. §987) on the date of this loan agreement.

**PURCHASE MONEY LOAN** – If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan. "Purchase Money Loan" means any loan the proceeds of which, in whole or in part, are used to acquire any property securing the note and all extensions, renewals, consolidations and refinancings of such note.

**DISHONORED CHECK CHARGE** – In the event I make payment by check or other instrument or authorization that is dishonored by the institution upon which it is drawn, I agree to pay a dishonored check charge in the amount of $15.00.

### ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS** – This security agreement secures the note and all extensions, renewals, refinancings and modifications of the note and any future advances by You. This security agreement will last until it is discharged in writing.

**PROPERTY** – The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word Property includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from property.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** – I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position.

I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

**INSURANCE** – I agree to furnish insurance on the property against the risks and for the amounts you require. I will name you as loss payee on any such policy, you may require added security on the loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference I will buy the insurance from a firm authorized to do business in Mississippi. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

**DEFAULT AND REMEDIES** – If I am in default, in addition to the remedies listed in the note portion of this document you may seek the following remedies:

(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate disclosed on page 1 until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion; and
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. You may apply what you receive from the sale of the Property to your expenses and then to the balance due under the note. If what you receive from the sale of the Property is less than what I owe you, I agree to pay the deficiency plus interest at the Post-Maturity Interest rate on page 1 (to the extent permitted by law).

I agree that when you must give notice to me of your intended sale or disposition of the property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

**FILING** – A copy of this security agreement may be used as a financing statement when allowed by law.

**FILING FEES** – I agree to pay all fees required to record, continue, and terminate any security interest or lien granted to you.

Initial

JM

Borrower/Debtor Initials    Borrower/Debtor Initials    Borrower/Debtor Initials

**SEE PAGE 3 FOR ADDITIONAL TERMS AND CONDITIONS**

MS NOTE & DISC/REV 12/2025                    PAGE 2 of 3

*1737524739811-1-3-2-1*

The following Notice applies only if the proceeds of this loan have been applied in whole or substantial part to the purchase of goods and/or services from a person who, in the ordinary course of this business sells such goods and/or services to consumers and borrower has been referred to the Lender by the Seller, or Lender is affiliated with the Seller by common control, contract, or business arrangement.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BORROWER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE BORROWER SHALL NOT EXCEED AMOUNTS PAID BY THE BORROWER HEREUNDER.**

**ARBITRATION:** If Borrower(s), Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, then the terms of that Arbitration Agreement are incorporated and made part of this Disclosure Statement, Promissory Note, and Security Agreement by this reference.

Initial

JM

Borrower/Debtor Initials        Borrower/Debtor Initials        Borrower/Debtor Initials



MS NOTE & DISC/REV 12/2025



*1737524739811-1-3-3-1*

**Lendmark** Financial Services™

0495-012922

## PERSONAL AND OTHER COLLATERAL LIST

This schedule is intended to include only property in which a creditor is authorized to have a security interest under the regulations of the Federal Trade Commission (16 C.F.R. Part 444). "Household goods" are listed only when the security interest is given to secure the purchase price of those goods, or a security interest in household goods is otherwise permitted. "Household goods" are defined as clothing, furniture, appliances, one television and one radio, linens, china, crockery, kitchenware, and personal effects, but does not include the following: works of art, electronic entertainment equipment (except one television and one radio), antiques, and jewelry (other than wedding rings). See the Disclosure Statement, Promissory Note, and Security Agreement for additional terms applicable to this security interest.

**Description of Personal Property:**

| | Value of Property |
|---|---|
| HUSQVARNA RIDING MOWER | $5000.00 |
| HUSQVARNA WEED EATER AND BLOWER | $1200.00 |

**Total of Personal Property:**  $   6200.00

\* If the Borrower grants a non purchase money security interest in a television
and/or radio, the borrower must own at least one other television and/or radio that
is not being used for collateral.
I/we hereby certify that I/we are sole owner(s) free and clear of any liens, claims or attachments of any nature of the property listed above. I/we also certify
that the property listed above is located at the borrower's address.

Copy of

## OTHER COLLATERAL

This schedule is intended to include any property in which a creditor is authorized to have a security interest under the Uniform Commercial Code. Borrower(s) or Non-obligor(s) give(s) a security interest in the property for which a description is completed below. See the Disclosure Statement, Promissory Note, and Security Agreement for additional terms applicable to this security interest.

**Description of Other Collateral:**

Original

**Value of Collateral**

**Total of Collateral:**  $   $0.00

Date   12/31/2025

Date

Borrower   JOSEPH MARTIN
2008F67F48CB4DB

Co-borrower



*1737524739809-1-1-1-1*

PERSONAL PROP AND OTHER COLLATERAL/REV 6/23        Page 1 of 1